FOR PUBLICATION

UNITED STATES BANKRUPTCYCOURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                      :    Chapter 7

In re:                                             :

                                                     :    Case No. 04-37527 (cgm)

NITTOLO LAND DEVELOPMENT            :
ASSOCIATION, INC.                         :
                                                      :
                                  Debtor.        :
                                                      :
------------------------------------------------------------------X

## MEMORANDUM DECISION ON MOTION OF
## FLEET NATIONAL BANK TO DETERMINE THE VALUE OF
## SECURED CLAIM PURSUANT TO FED. R. BANKR. P. 3012

**A P P E A R A N C E S :**

J. Lawrence Crocker, Esq.
Alyson M. Fiedler, Esq.
Buchanan Ingersoll P.C.
One Chase Manhattan Plaza
New York, New York 10005
*Attorneys for Fleet National Bank*

Michael O'Leary, Esq.
225 Dolson Avenue
Middletown, New York 10940
*Chapter 7 Trustee*

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

      Creditor Fleet National Bank ("Fleet") moves pursuant to Fed. R. Bankr. P. 3012[1]

for a determination of the value of its claim (the "Motion"), which Fleet asserts is secured

by the cash proceeds from a sale of real property. Fleet claims to have a secured status in

---

[1] Pursuant to Rule 3012 of the Federal Rules of Bankruptcy Procedure:

    The court may determine the value of a claim secured by a lien on
    property in which the estate has an interest on motion of any party in
    interest and after a hearing on notice to the holder of the secured claim
    and any other entity as the court may direct.

the proceeds pursuant to a financing statement filed on May 17, 2001 pursuant to Article 9 of New York's Uniform Commercial Code ("UCC"). In the financing statement Fleet claims a security interest in, among other things, the Debtor's "accounts" and "general intangibles". Under the unusual circumstances of this case, Fleet does hold a secured claim in cash proceeds from the pre-petition sale of the Debtor's real property, provided that Fleet can demonstrate that it properly executed its financing statement under UCC § 9-503(a) and 9-506.

## Background

The facts in this case begin not with the commencement of this Debtor's case on October 9, 2004 but with the case filed by the owners of this entity, Neil and Lorianne Nittolo, on April 1, 2003 (Case No. 03-35756; hereafter, the "Personal Bankruptcy Case"). In the Personal Bankruptcy Case, Neil and Lorianne Nittolo disclosed their joint ownership of this Debtor. On January 12, 2004, Paul Banner, the Chapter 7 trustee in the Personal Bankruptcy Case filed a notice of intended sale of property located at 108 Ice Pond Road in Southeast, New York (the "Southeast Property"). The Southeast Property was not listed in the schedules of the Personal Bankruptcy Case. On April 8, 2004 Mr. Banner filed a Trustee's Report of Sale confirming that the Southeast Property had been sold to the highest bidder, William J. Ford, for $215,000. Mr. Banner indicated that the Southeast Property was valued at $235,000 based on an appraisal dated July 17, 2003. Having accomplished the sale in the Personal Bankruptcy Case, Mr. Banner intended to distribute the proceeds to the unsecured creditors of Neil and Lorianne Nittolo. At that point, Fleet explains that it:

> objected to the proposed distribution because (i) the proceeds could not be
> distributed through the individual bankruptcies because they were the

- 2 -

> property of the corporate Debtor herein, and (ii) the proceeds should have been surrendered to Fleet pursuant to its blanket security interest in all corporate assets. Fleet's secured status in debtor's contract rights and general intangibles encompasses the proceeds of the Trustee's sale of [the Southeast Property].

Motion at ¶6.

Mr. Banner responded to Fleet's objection to distribution of the proceeds from the Southeast Property in the Personal Bankruptcy Case by causing a Chapter 7 petition to be filed on behalf of this Debtor on October 9, 2004.[2] Michael O'Leary was appointed as the trustee (the "Chapter 7 Trustee") in this case. In the petition filed by Mr. Banner on behalf of this Debtor, Schedule B, item 2 lists the following: "Bank of New York (Trustee's account in the name of Neil & Lorianne Nittolo) from proceeds of sale of the debtor real estate" (hereafter, the "Proceeds"). The value of the Proceeds is listed as $30,413.32. Fleet was listed on Schedule F as an unsecured creditor with a $110,000 claim arising from a "small business loan."

Fleet filed a proof of claim in this case for $121,264.42 and asserts that the $30,413.32 held by the Trustee is secured pursuant to a promissory note and line of credit agreement, each dated May 2, 2001. Article VI of the line of credit agreement granted Fleet a security interest in the Debtor's "Accounts, Books/Records, Chattel, Documents, Equipment, Fixtures, Instruments, General Intangibles, Inventory, Securities, Machinery, Furniture [and] Contract Rights". On May 17, 2001, Fleet filed a UCC financing statement in New York under the name of "Nittolo Land Development Associates, Inc.," a name at variance with the Debtor's name in this petition, Nittolo Land Development Association, Inc. In Exhibit A to the financing statement Fleet claimed:

---

[2]    Mr. Banner had this authority as the trustee of the sole shareholders of the Debtor.

- 3 -

> A continuing security interest in all accounts and account receivable, contracts, contract rights, general intangibles, instruments, documents, chattel paper, all obligations, in whatever form, owing to the Debtor, and all rights in the merchandise or services which gave rise to any of the foregoing, whether now existing or hereafter arising, now or hereafter received by or belonging or owing to Debtor, and in the proceeds thereof, and in all goods including a) all inventory, including raw materials, work in process, and other tangible personal property held for sale or lease or furnished or to be furnished under contracts or service or used or consumed in Debtor's business, wherever located, whether now existing or hereafter arising, now or hereafter received by or belonging to Debtor, and in the proceeds and products thereof; and b) all machinery, equipment, furnishings, fixtures, and other tangible personal property (with all accessions thereto) used or bought for the use primarily in business, wherever located, whether now existing or hereafter arising, now or hereafter received by or belonging to Debtor, used in the proceeds and products thereof, including without limitation tax refunds and insurance proceeds on any of the foregoing.

In the Motion, Fleet argues that the Proceeds constitute an "account" or "general intangible" covered by its security interest.

The Chapter 7 Trustee takes no position on the Motion but calls the Court's attention to the facts:

- The name on Fleet's financing statement is not identical to the Debtor's name.
- Fleet's interest in the Proceeds, if any, does not appear to constitute a "general intangible".
- As the Debtor was not a party to the sale of the Southeast Property, the Debtor had no "contract rights" to which Fleet's lien could have attached.

**DISCUSSION**

Fleet did not submit a memorandum of law as part of its two-page Motion. Other than citing with no discussion two cases from 1984 and 1980, law that has been superseded, Fleet did not provide the Court with any guide to the labyrinth of issues that arise from Fleet's claim that UCC Article 9 applies to its security interest. For example: Which version of UCC Article 9 applies to Fleet's security interest? Does Fleet's security interest in "accounts" and "general intangibles" extend to the cash proceeds held by the Chapter 7 Trustee? Did Fleet properly perfect its security interest by filing its financing statement in a manner that provided sufficient notice of the security interest?

**Revised Article 9 Applies**

Revised Article 9 became effective in New York on July 1, 2005. *See* UCC § 9-701. According to UCC § 9-702, "Revised Article 9 applies to a transaction or lien within its scope, even if the transaction or lien was entered into or created before Revised Article 9 takes effect." *See also* UCC § 9-702, comment 1 ("secured transactions entered into under former Article 9 must be terminated, completed, consummated, and enforced under this Article"). Thus, although the security agreement and financing statements were executed prior to the effective date of Revised Article 9, Revised Article 9 applies to Fleet's security interest.[3] Unless otherwise noted, all references to UCC Article 9 in

---

[3] It follows that Fleet's reliance on *In re D.J. Maltese, Inc.*, 42 B.R. 589 (Bankr. E.D. Mich. 1984) is misplaced. That case held that under Former Article 9, the right to payment for the pre-petition sale of real property was not an account, but that the debtor had a "contract right" within the definition of "general intangibles". *Id.* at 592. If Former Article 9 applied to this case, the result would probably have been different from that in *Maltese* because the Debtor in this case was not a party to the contract of sale. The contract of sale was between Mr. Banner (as trustee in the Personal Bankruptcy Case) and the purchaser of the Southeast Property. The Debtor probably did not have any "contract right" to which Fleet's security interest could have applied.

- 5 -

this opinion are to Revised Article 9 as adopted in New York; references to Article 9 prior to the adoption of Revised Article 9 will be prefaced as "Former Article 9."

**The Proceeds Constitute an "Account"**

The parties agree that Fleet had no lien in the Southeast Property prior to the sale. In any event, UCC Article 9 does not apply to "the creation or transfer of an interest in or lien on real property". UCC § 9-109(d)(11). Fleet claims that upon the sale of the Southeast Property, an "account" was created, and that Fleet's security interest extended to the account. UCC § 9-102(a)(2) defines "Account" to include: "a right to payment of a monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of . . . ." Although Former Article 9 restricted the definition of account to "any right to payment for goods sold or leased or for services rendered" (*see* Former Article 9-106), Revised Article 9 expanded the definition to a right to payment of proceeds from the sale of real property where the real property "has been or is to be sold".

Thus, under Revised Article 9, a UCC security interest, which could not apply to real property, can be created in the right of the seller to receive payment for real property that "has been or is to be sold." The word "created" is crucial in the bankruptcy context, because such a lien would not arise in a post-petition sale of a real property belonging to a debtor where the sale is conducted by the chapter 7 trustee assigned to the debtor's case in the administration of the debtor's bankruptcy case. This is because the security interest in the account is "created" in a right that has been newly acquired post-petition by the bankruptcy estate.

- 6 -

Section 552(b) of the Bankruptcy Code states that security interests in property "acquired before the commencement of the case," including proceeds, profits, rents or the like that result from the pre-existing security interest will extend post-petition to such proceeds, profits or rents "to the extent provided by such security agreement and by applicable nonbankruptcy law, except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise." Section 552(a) of the Bankruptcy Code provides a different rule where the creditor does not hold a security interest in property prior to the bankruptcy filing:

> Except as provided in [Section 552(b)], property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

Section 552(a) provides the normal rule, that a creditor's pre-petition security interest in accounts will not extend to the post-petition proceeds of a trustee's sale of real property.

This, as the Court has alluded, is not a normal case. Mr. Banner sold the Southeast Property as part of the Personal Bankruptcy Case and later determined that the Southeast Property, and consequentially the Proceeds, was not property of the estate in the Personal Bankruptcy Case. At the time the Southeast Property was sold, no bankruptcy case had been commenced against this Debtor, and no bankruptcy estate existed. Thus, when the Debtor's right to payment of the Proceeds arose pre-petition, in the parlance of Article 9 an "account" was created.

Because Fleet's security interest, if properly perfected by filing of the financing statement, would extend to the Proceeds as an "account," this Court does not decide whether the Proceeds also constitute "general intangibles."

**Effect of Financing Statement Error Unclear**

The only remaining issue is whether Fleet properly executed its financing statement. Fleet's Reply does not assist in answering these questions because it only cites Former Article 9 and case law prior to the adoption of Revised Article 9.

Under UCC § 9-503(a), the name of a debtor that is a "registered organization" (e.g., a corporation) is sufficiently provided in a financing statement "only if the financing statement provides the name of the debtor indicated on the public record of the debtor's jurisdiction of organization which shows the debtor to have been organized".

UCC § 9-506 discusses the effects of errors or omissions in financing statements. First, UCC § 9-506(a) states that a financing statement "substantially satisfying" the requirements of Revised Article 9 will be effective even if it contains "minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading." Next, UCC 9-506(b) states:

> Except as otherwise provided in section (c), a financing statement that fails sufficiently to provide the name of the debtor in accordance with Section 9-503(a) is seriously misleading.

Section 9-506(c) describes the procedure by which it an inaccuracy in the name of a "registered organization" may be shown to be not "seriously misleading":

> If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with Section 9-503(a), the name provided does not make the financing statement seriously misleading.

Several factual issues must be determined before the Court can determine whether Fleet's financing statement was properly executed. First, it is not clear whether Fleet has complied with UCC 9-503(a) because it has not been shown that Fleet provided "the

name of the debtor indicated on the public record." As the Chapter 7 Trustee noted, "[e]ither [Fleet] misstated the corporation's name on the Security Agreement and UCC-1 Financing Statement, which can be fatal to lien perfection, or Trustee Banner misstated the corporate name on the petition." Chapter 7 Trustee's "Affidavit in Response to Motion to Determine Value of Fleet's Secured Claim," p. 1. Second, assuming that the name of the Debtor indicated on the public record is as listed in the petition, Fleet must demonstrate, following the procedure in UCC 9-506(c), that the inconsistency is not "seriously misleading".

## **Conclusion**

The foregoing constitutes the opinion of the Court. Fleet and the Chapter 7 Trustee are requested to provide the Court with further submissions regarding whether Fleet's financing statement was properly executed, including (1) the Debtor's name as listed on the Debtor's certificate of incorporation and (2) if Fleet failed to sufficiently provide the name of the Debtor in accordance with UCC § 9-503(a), whether standard search logic in the filing office (the New York Secretary of State) would disclose Fleet's financing statement.

Dated: Poughkeepsie, New York
     November 18, 2005      /s/ Cecelia Morris
                                       CECELIA G. MORRIS
                                       UNITED STATES BANKRUPTCY JUDGE